## WHITMAN v. CITIZENS' BANK OF READING. SAME v. NORTON. SAME v. WATTS.

### (Circuit Court of Appeals, Second Circuit. June 13, 1901.)

### Nos. 92, 111, 93.

1. CORPORATIONS—DISSOLUTION—KANSAS STATUTE.
    Under the provision of Gen. St. Kan. c. 23, § 40, that a corporation shall be deemed to be dissolved, for the purpose of enabling its creditors to prosecute suits against stockholders, if it has suspended business for more than one year, as construed by the supreme court of the state, such suspension of business operates as a dissolution only for the purpose stated; for all other purposes the corporation continues, and may be sued and may defend actions as before, and service may be made upon, or accepted by, the same officers.

2. SAME—VALIDITY OF JUDGMENT AGAINST—APPEARANCE BY CASHIER.
    Under the statute of Kansas, which authorizes service to be made upon the cashier, secretary, or managing agent of a corporation when the president is absent from the county, the acceptance of service by the cashier of a corporation of that state, or his voluntary entry of appearance in a suit brought against the corporation more than a year after it has suspended business, is valid and binding on the corporation where the president was a nonresident and absent from the state.

3. SAME—STATUTORY LIABILITY OF STOCKHOLDER—ACTION TO ENFORCE.
    An action by a creditor of a Kansas corporation against a stockholder to enforce the remedy given by Gen. St. Kan. c. 23. § 32. is transitory, and may be maintained in any court of competent jurisdiction, either federal or state, in states other than Kansas.

4. SAME—INTEREST.
    Under the provisions of the constitution and statutes of Kansas. which secure dues from corporations by the individual liability of stockholders, and require a stockholder to pay an unsatisfied execution against the corporation, a creditor enforcing the remedy so given against a stockholder in another forum is entitled to recover 10 per cent. interest to

the date of trial, where that was the contract rate, and also the rate borne by the judgment rendered thereon against the corporation in a court of Kansas, in accordance with the requirement of the state statute.

**5. SAME—ACTION BY ASSIGNEE.**

The remedy given to judgment creditors of a corporation by Gen. St. Kan. c. 23, § 32, which authorizes a plaintiff in an unsatisfied execution against the corporation to "proceed by action to charge the stockholders with the amount of his judgment," may be enforced by an assignee of the judgment by an action in his own name.

**6. SAME—BASIS FOR ACTION—JUDGMENT IN SPECIAL PROCEEDING.**

Gen. St. Kan. c. 23, § 32, provides that after the return of an execution against a corporation unsatisfied an execution may be issued against any stockholder, but that no such execution shall issue "except on an order of the court in which the action, suit, or other proceeding shall have been brought or instituted." The section also provides that the plaintiff in the execution may proceed by action to charge the stockholder. A Kansas corporation made an assignment, and a creditor appealed from an order of the assignee disallowing its claim to the district court, as provided for by statute. Both the corporation and assignee appeared and contested the suit, and the court rendered a judgment establishing the claim, upon which an execution was subsequently issued against the corporation, and returned unsatisfied. *Held* that, notwithstanding such judgment was rendered in what was denominated by the statute a special proceeding, and was in the nature of a judgment in rem, it was one within the contemplation of said section 32, on which the court was authorized to award an execution, and that such judgment and execution constituted the required prerequisite to an action to charge a stockholder.

**7. SAME—LIMITATIONS—LAW GOVERNING.**

An action to charge a stockholder in a Kansas corporation with liability for debts of the corporation, under the constitution and statutes of the state, is governed as to limitation by the law of the forum; there being no limitation prescribed as to such actions by the statute of Kansas other than that contained in its general statute of limitations.

In Error to the Circuit Court of the United States for the Southern District of New York.

The Citizens' Bank of Reading, a Pennsylvania corporation, Kate A. Norton, a citizen of Kansas, and John Watts, as receiver of the American National Bank of Arkansas City, a national banking corporation established in the state of Kansas, each brought an action at law in the circuit court for the Southern district of New York against George L. Whitman, a citizen of the state of New York, resident in the city of New York, and stockholder in the Arkansas City Investment Company, an insolvent Kansas corporation, to recover the amount of debts due to the plaintiffs, respectively, by said corporation. The suits were brought under section 32, c. 23, Gen. St. That section and section 44 of the same chapter, which gave another remedy to the creditor of an insolvent corporation against a stockholder, and section 40 are as follows:

"Sec. 32. If any execution shall have been issued against the property or effects of a corporation, except a railway or a religious or a charitable corporation, and there cannot be found any property whereon to levy such execution, then execution may be issued against any of the stockholders to an extent equal in amount to the amount of stock by him or her owned, together with any amount unpaid thereon, but no execution shall issue against any stockholder, except upon an order of the court in which the action, suit or other proceeding shall have been brought or instituted, made upon motion in open court, after reasonable notice in writing to the person or persons sought to be charged; and, upon such motion, such court may order execution to issue accordingly; or the plaintiff in the execution may proceed by action to charge the stockholders with the amount of his judgment."

"Sec. 44. If any corporation, created under this or any general statute of this state, except railway or charitable or religious corporations, be dissolved, leaving debts unpaid, suits may be brought against any person or persons who were stockholders at the time of such dissolution, without joining the corporation in such suit; and if judgment be rendered, and execution satisfied, the defendant or defendants may sue all who were stockholders at the time of dissolution, for the recovery of the portion of such debt for which they were liable, and the execution upon the judgment shall direct the collection to be made from property of each stockholder, respectively; and if any number of stockholders (defendants in the case) shall not have property enough to satisfy his or their portion of the execution, then the amount of deficiency shall be divided equally among all the remaining stockholders and collections made accordingly. deducting from the amount a sum in proportion to the amount of stock owned by the plaintiff at the time the company dissolved."

"Sec. 40. A corporation is dissolved, first, by the expiration of the time limited in its charter; second, by a judgment of dissolution rendered by a court of competent jurisdiction; but any such corporation shall be deemed to be dissolved for the purpose of enabling any creditors of such corporation to prosecute suits against the stockholders thereof to enforce their individual liability, if it be shown that such corporation has suspended business for more than one year."

In the circuit court, a verdict in each case was directed for the plaintiff, and to review the respective judgments entered upon those verdicts, each defendant brought a writ of error. The facts which are applicable to each case are that the Arkansas City Bank was formed in September, 1886, for the purpose of receiving money on deposit, and conducting a general banking, loaning, and investment business. The name was changed by vote of the stockholders on May 25, 1889, to Arkansas City Investment Company. A voluntary assignment of all its property for the benefit of its creditors was made on December 15, 1890, to Charles A. Scruton. The defendant was, at the organization of the bank, and still is, a stockholder therein to the amount of 1,000 shares.

Wm. G. Wilson and Wm. G. Clarke, for plaintiff in error.

Wm. B. Hornblower, for defendants in error Citizens' Bank and Watts.

Charles E. Hughes, for defendant in error Norton.

Before SHIPMAN, Circuit Judge, and WHEELER and COXE, District Judges.

SHIPMAN, Circuit Judge, after stating the foregoing facts, delivered the opinion of the court, as follows:

## The Citizens' Bank of Reading Case.

A judgment in favor of the plaintiff for $4,997.50 upon suit brought on December 14, 1894, in the proper state court in Kansas, was recovered against the corporation on April 16, 1895. Execution was issued thereon on April 30, 1895, and was returned unsatisfied. The complaint also set forth the notes upon which the judgment was rendered. No defense arising upon a statute of limitations was pleaded. Retzer v. Wood, 109 U. S. 185, 3 Sup. Ct. 164, 27 L. Ed. 900. The answer denied the allegations in regard to the judgment, but made no averment of defects "which required extrinsic evidence to make them apparent." The face of the record showed an acceptance of service of process by Huey as cashier and manager, and the appearance of an attorney for the defendant, and proof was not permissible, under the averments of the answer, that he acted without authority. Hill

v. Mendenhall, 21 Wall. 453, 22 L. Ed. 616.   It is said that the record shows upon its face that the Kansas court was without jurisdiction because the acceptance of service was made by Huey as cashier and managing officer, and the employment of an attorney was also made by him, four years after the general assignment for the benefit of creditors, and therefore after his authority and duties as cashier had ceased, and after the dissolution of the corporation.   This position is not sustained by the Kansas decisions upon the construction of the statutes now in question, or of the statutes which regulate the service of process upon corporations.   It is true that a Kansas corporation is, under section 40, heretofore quoted, deemed to be dissolved for the purpose of enabling any creditors of such corporation to prosecute suits against the stockholders to enforce their individual liability without a judgment against the corporation, if it be shown that such corporation had suspended business for more than a year; but this dissolution is merely for that specified purpose.   "The cessation of business does not operate as a legal or complete dissolution of the corporation, but it is deemed to be dissolved but for a single purpose,—that of enabling creditors to enforce the individual liability of stockholders.   For all other purposes, the bank continued to be a corporation in the eye of the law, and creditors had a right to sue the bank in its corporate capacity."   Sleeper v. Norris, 59 Kan. 555, 53 Pac. 757.   The remedies under sections 32 and 44 are distinct, and a creditor can adopt either, unless prevented by the statute of limitations.   Cottrell v. Manlove, 58 Kan. 405, 49 Pac. 519.

In the absence of the president of a corporation from the county wherein the corporation is located, service upon the cashier, secretary, or managing agent is, by the statutes of Kansas, valid service upon the corporation.   The waiver of the service of summons by the president of a Kansas corporation, and his voluntary entering of appearance more than a year after it ceased to do business, was held to be sufficient authority for a court to render a valid judgment against the corporation, which was a sufficient foundation for an action against a stockholder; the execution having been unsatisfied.   Bank v. Prescott, 60 Kan. 490, 57 Pac. 121.   The president of the investment company was a nonresident of Kansas.   Huey was its cashier, secretary, and the only managing officer, and, if it is of any importance, he was also a director.   Valid service could be made upon him, and his acceptance of service was also valid.

The next question is the one, which, having been presented to this court in Whitman v. Bank, 28 C. C. A. 404, 83 Fed. 288, came before the supreme court in the same case by certiorari (176 U. S. 559, 20 Sup. Ct. 477, 44 L. Ed. 587), and was whether an action upon the stockholders' liability, as prescribed in section 32, was transitory, and could be maintained in the courts of competent jurisdiction, either federal or state, in states other than Kansas.   The supreme court decided the question in the affirmative, and held that the constitution of Kansas had cast a definite liability upon each stockholder of a banking corporation; that, to the extent of declaring the liability, the constitution was self-executing; that, by section 32, the legislature had prescribed the mode of enforcing the liability; and that "the lia-

bility, which by the constitution and the statutes is thus declared to rest upon the stockholder, though statutory in its origin, is contractual in its nature," and that the statute was not penal in its character.

It is now urged by the defendant, and the argument was pressed in each of the three cases, that, inasmuch as a few days after the decision in the Bank of Oxford Case, the supreme court of Kansas, in Woodworth v. Bowles, 61 Kan. 569, 60 Pac. 331, had declared that the constitutional provision was not self-executing, the decision of the highest court of a state in regard to its constitution is controlling, and that the supreme court of the United States will adopt the view of the Kansas court. Fairfield v. Gallatin Co., 100 U. S. 47, 25 L. Ed. 544. It is incumbent upon this court to regard the expressed opinion of the supreme court of the United States as controlling until changed by itself, and, furthermore, it is not apparent that the conclusions of that court in regard to the transitory character of an action against the stockholder will be modified, if it should accede to the views of the highest court of Kansas in regard to the self-executing character of the constitutional provision. This court, in the Bank of Oxford Case, 28 C. C. A. 404, 83 Fed. 288, decided that, upon the premise that the constitutional provision was not self-executing, the remedy by section 32 was transitory, and is still of that opinion; and, therefore, we do not think it needful to reconsider the question.

The judgment of the Kansas court was for the amount due, with 10 per cent. interest, and in the verdict of the jury in the circuit court the same rate of interest was allowed to the date of the trial. The propriety of an allowance of 10 per cent. interest was and is challenged by the defendant. The notes upon which the Kansas judgment was based bore interest at 10 per cent. The Kansas statute provides that when a rate of interest is specified in any contract, that rate shall continue until full payment is made; and any judgment rendered on any such contract shall bear the same rate of interest mentioned in the contract, which rate shall be specified in the judgment, not exceeding 10 per cent. per annum. The Kansas constitution declares that "dues from corporations shall be secured by individual liability"; in other words, that the stockholder shall be liable for the debts of the corporation to an amount equal to the par of his stock. The obligation of the stockholder is to pay the debts of the corporation, and section 32 declares that the stockholder must pay the unsatisfied execution, or that the plaintiff in the execution may proceed to charge him with the amount of the judgment. The suit is not upon the judgment, but to enforce the statutory remedy against a stockholder, arising upon his contract to pay the debts of the corporation, and the amount due to the plaintiff is conclusively established by a judgment bearing 10 per cent. interest. The distinction between the New York and Massachusetts cases (Wells, Fargo & Co. v. Davis, 105 N. Y. 670, 12 N. E. 42; Clark v. Childs, 136 Mass. 344), which allow only the statutory interest of the forum upon judgments of other states, and this case is that in those cases interest was allowed as damages, and in this case interest at 10 per cent. was al-

lowed to the date of trial, because the stockholder had agreed to pay it, and the Kansas statute required a judgment to bear interest not exceeding 10 per cent., if such interest was a part of the contract.

We see no error in the judgment in this case.

### The Norton Case.

This suit was brought on July 15, 1897, to recover the amount evidenced by five judgments against the Arkansas City Investment Company, each rendered by the Kansas state court, having jurisdiction of the subject-matter, and each in favor of a citizen of Kansas. Kate A. Norton recovered judgment February 21, 1894, for $2,982.28. Amanda A. Norton recovered judgment February 27, 1894, for $3,752.31. Charles A. Scruton recovered judgment March 13, 1893, for $6,149.65. Esther A. Denton recovered judgment September 25, 1895, for $767.68. Sarah Young recovered judgment September 9, 1895, for $7,513.08. The last-named four judgments were assigned to Kate A. Norton before the suit was brought. No statute of limitations was pleaded. The answer averred that the judgments were taken without jurisdiction on the part of the district court of Kansas acquired by due and personal service, or by any authorized appearance, or by any other mode of acquiring jurisdiction over the Arkansas City Investment Company. In the two Norton Cases the defendant appeared by attorneys, and apparently made a vigorous defense. The attempt to prove that neither attorney was authorized by the corporation to appear in its own behalf was very weak. The Denton and Young judgments were rendered upon voluntary appearances by Huey, the cashier of the defendant, who waived the issuance and service of process. Process in the Scruton Case was personally served upon Huey as cashier and managing officer, and judgment was rendered upon default.

The provisions of the Kansas statutes with regard to the service of a summons are as follows:

"Sec. 68. A summons against a corporation may be served upon the president, mayor, chairman of the board of directors, or trustees or other chief officer; or, if its chief officer is not found in the county, upon its cashier, treasurer, secretary, clerk or managing agent; or, if none of the aforesaid officers can be found by a copy left at the office or other place of business of such corporation with a person having charge thereof."

"Sec. 64. The service shall be by delivering a copy of the summons to the defendant personally or by leaving one at his usual place of residence at any time before the return day.

"Sec. 65. In all cases the return must state the time and manner of service.

"Sec. 66. The officer to whom the service is directed must return the same at the time therein stated."

Huey was the cashier, secretary, and managing agent of the corporation from the time of its organization, and, the president being a nonresident of the state, was in exclusive control of its affairs. The Kansas decisions and statutes show that the bank was continuously an existing corporation, and subject to be sued; that the cashier was the proper person to be served with process, and to act for the bank, in the absence of the president; and that, being the proper officer to be served, he has authority to give jurisdiction to the court by

waiving service of the summons, and entering his appearance for the bank. Sleeper v. Norris, 59 Kan. 555, 53 Pac. 757; Bank v. Prescott, 60 Kan. 490, 57 Pac. 121; City of North Lawrence v. Hoysradt, 6 Kan. 170.

It is next suggested that the claims evidenced by the assigned judgments cannot be included in one suit, because, under section 32, the plaintiff in the execution may proceed to charge the stockholder, and, therefore, the plaintiff in the action must be the person named in the execution. Such a construction of the statute would be an exceedingly narrow one. Inasmuch as the plaintiff in the execution may charge the stockholder, the statute can properly be construed to mean the plaintiff in the execution and the person who represents him, whether administrator, executor, or assignee. Inasmuch as assignments of judgments are permitted, and the assignee is permitted by statute to sue in his own name, it must follow that it was not necessary to bring five suits, but the claims could be consolidated without harm to the rights of the assignee.

The question in regard to interest in excess of 6 per cent. until the date of the judgment against the stockholder was considered in the previous case.

There was no error in the judgment.

## The Watts Case.

The distinguishing question in this case is not whether the plaintiff had recovered a valid judgment, but whether it was the judgment which is made a prerequisite to an action; that is, a judgment upon which an execution could properly issue. The provisions of the Kansas statute (sections 362, 365–368, Gen. St. 1899) in regard to the allowance of claims against an estate which had been assigned for the benefit of creditors are as follows:

"The assignee, having given notice of the time and place of adjusting and allowing demands against the estate of his assignor, hears and decides upon the allowance of all claims that have been presented, and his decision is final, unless a creditor or some other person interested shall, after a decision is made on any such claim, ask an appeal therefrom; and all appeals so asked shall be allowed by such assignee to the district court of the county having jurisdiction thereof. All appeals so allowed shall be taken and made in the same manner as appeals are taken and made in justices' courts, and the assignee shall certify all cases and transmit the papers to the district court. Upon such appeal being allowed and certified, the court becomes possessed of the case, and hears it de novo. The parties are in court without further service of process. All judgments rendered in favor of any claimant in the district court are certified by the clerk thereof to the assignee, who shall allow the same, and class it as if such judgment had been rendered by him on the original hearing thereof."

In this case, the receiver of the American National Bank of Arkansas City presented the claim of that bank against the Arkansas City Investment Company to Charles A. Scruton, as its assignee, who disallowed the claim. The receiver thereupon appealed to the district court. The investment company appealed by its attorney, and contested the allowance of the claim. A trial by jury was waived, and the case was heard by the court, which made a finding of facts, allowed the claim, and entered a judgment as follows:

"That the plaintiff, J. Sam Brown, as receiver of the American National Bank of Arkansas City, Kansas, do have and recover of and from the Arkansas City Investment Company and C. A. Scruton, as such assignee, the sum of $27,872.77, together with interest thereon from this date at the rate of ten per cent. per annum, together with the costs herein taxed at the sum of $47.90; and that said Charles A. Scruton, as assignee of the Arkansas City Investment Company, and his successors in trust, pay said claim so allowed in due course of administration of said insolvent estate."

The judgment was rendered October 31, 1893, and execution was, at the request of the receiver, issued on March 3, 1896, and was returned unsatisfied. This suit was commenced August 13, 1896, and subsequently the complaint was amended by alleging the notes on which the claim before the district court was based. The statute of limitations was pleaded, and the answer denied the judgment, but made no averments in regard to nonservice or nonappearance of the bank. The admission of the judgment was objected to because it was not the judgment as alleged, but was the record of a special proceeding.

Without reciting the various particulars in which the record shows the appearance of the investment company upon the appeal, it sufficiently shows that the corporation and Scruton, as its assignee, both appeared and defended against the allowance of the claim. The argument that this judgment upon the appeal was not a judgment against the investment company in personam, or one upon which an execution could properly issue, is founded upon the fact that the statutes of Kansas divide remedies in courts of justice into actions and special proceedings; that a judgment is the final determination of the rights of the parties in an action; that the appeal was a special proceeding to determine the validity of the claim as against the assigned estate; that the judgment is in rem, and acts only upon the estate; and that the statute in regard to appeals of this class does not contemplate the issuance of an execution. In support of these propositions, reference is made to Banking Co. v. Kitchen, 8 Kan. App. 445, 57 Pac. 494, in which it was held that an allowance of a claim by an assignee is not a judgment in personam, and not a merger of the debt, but affects only the assigned estate; and to Limbocker v. Higinbotham, 52 Kan. 696, 35 Pac. 783, in which the court said that the assignment proceeding is in the nature of a proceeding in rem, and that while an assignment for creditors is open, a creditor can maintain an action upon the original claim against the assignor, and recover a personal judgment; and it has also been held that the district court upon the appeal acts only in an appellate capacity. Kohn v. Hine, 7 Kan. App. 776, 54 Pac. 117. This line of argument is based entirely upon the statutory character of an appeal from the decision of an assignee, which is a special proceeding, and may properly be styled a proceeding in rem; and if it was apparent that the provisions of section 32 were limited to a judgment in an action in personam, the argument would have much force. Section 32, after declaring that an execution may issue against a stockholder, provides that no execution shall issue "except upon an order of the court in which the action, suit or other proceeding shall have been brought or instituted; * * * or the plaintiff in the execution may proceed by action to charge

the stockholder with the amount of his judgment." The original judgment was not necessarily to be founded upon an action in personam, but upon an action, suit, or other proceeding; and if a judgment in favor of the validity of the claim had been rendered in a proceeding in which the insolvent corporation was a party, and had been heard, although that proceeding was of a special character, the district court had apparently the authority to issue an execution. Section 32, in prescribing the mode of enforcing a stockholder's liability, did not apparently intend to provide that it was necessary to institute an original suit against the corporation; but if a judgment had in fact been rendered in a proceeding to ascertain the validity and the amount of the debt in which the corporation and the creditor were opposing parties, an execution could rightfully be issued.

In the appeal from the decision of Scruton the validity of the debt alleged to be due to the receiver of the American National Bank was the matter in issue, and the receiver and the investment company were in fact the contending parties, although Scruton, as assignee of the insolvent estate, was also a defendant. The cause was sometimes entitled as that of the receiver against the investment company and sometimes against Scruton, as assignee, and finally, upon a motion for a new trial by the investment company, the defendant was given 90 days to make and serve a case for review, and execution upon the judgment was stayed for 90 days. When the district court decided in favor of the appellant, it decided that the investment company owed, and ought to pay, the debt, and by that decision the stockholder is bound. Bank v. Farnum, 176 U. S. 643, 20 Sup. Ct. 506, 44 L. Ed. 619. We are of opinion that the judgment and the execution were such as were contemplated by section 32, and as the Kansas court had the apparent power to render and to issue, and constituted the prerequisites to an action against the defendant which the section required.

In this case statutes of limitations were pleaded. The investment company made a general assignment on December 15, 1890. The claim of the American National Bank, which had been presented to the assignee, was rejected on July 7, 1891, and the appeal was decided October 31, 1893. This suit was brought August 31, 1896, less than three years after the date of the judgment, and was brought under section 32, which requires a judgment against the insolvent corporation and an unsatisfied execution as prerequisites to a suit against a stockholder. Under that section, an action does not lie until a judgment has been obtained. Although by amendment the notes upon which the judgment was based were set forth, and upon the trial their existence and validity were proved, the complaint was still founded upon a single cause of action, and the amendment did not introduce a new and independent cause. But it is said that the cause of action accrued on December 15, 1891, at the expiration of one year from the date of the general assignment, because the decisions of the state of Kansas upon the subject of the applicability of its statutes of limitation have so decided; and the defendant relies upon Cottrell v. Manlove, 58 Kan. 405, 49 Pac. 519, and Bank v. King, 60 Kan. 733, 57 Pac. 952. In Cottrell v. Manlove the su-

preme court of Kansas decided that the remedies under sections 32 and 44 are not cumulative, and that either one can be adopted, and that there was no occasion for a creditor to await the recovery of a judgment against the company; but that, as the statute of limitations of Kansas limited an action to three years from the time when the cause of action accrued, if a plaintiff who can, under section 44, sue the stockholder in one year after the corporation ceases to do business, waits more than three years, and then sues under section 32, the statute of limitations will be applicable. He cannot neglect his remedy under section 44 for more than three years, sue upon another section, and avoid the Kansas statute.

Inasmuch as the Kansas statute is a general one, and the statutes in regard to the liability of stockholders of an insolvent corporation to its creditors do not contain provisions in regard to the limitations of actions, we think that the statutes of the forum in which the suit was brought must apply, and that the Kansas decisions upon the construction of the statute of limitations are not controlling in this state. Boyd v. Clark (C. C.) 8 Fed. 849. If the Kansas decisions which have been quoted should be held applicable in this case, it would follow that, because the plaintiff did not sue the defendant upon the notes which were due by the insolvent bank in the district or state of his residence within three years after December 15, 1891, the action would be barred; which would virtually import into the case the Kansas statute of limitations.

The several judgments are affirmed, with costs of this court.